# Exhibit D

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 24 CVS _____ |

MAKAYLA GRADO                )
                             )
       Plaintiff,            )
                             )
       v.                    )     **COMPLAINT**
                             )     **JURY TRIAL DEMANDED**
ATRIUM HEALTH, INC.;         )
ADVOCATE HEALTH, INC., THE   )
CHARLOTTE-MECKLENBURG        )
HOSPITAL AUTHORITY D/B/A ATRIUM )
HEALTH, INC.; THE CHARLOTTE  )
MECKLENBURG                  )
HOSPITAL AUTHORITY D/B/A     )
ADVOCATE HEALTH, INC., , and )
ATRIUM HEALTH, I, (Collectively, " )
Atrium Health"),             )
                             )
       Defendants.           )

NOW COMES the Plaintiff, by and through undersigned counsel, and complains of Defendants, alleges and says:

### I.   INTRODUCTION, PARTIES & JURISDICTION

1.  This is an action seeking damages against Defendants for violation of Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*,as amended and as amended by the Civil Rights Act of 1991; the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., and violations of N.C. Gen. Stat. §143-422.2 and N.C. Gen. Stat.§168A-3, this being an action for the wrongful discharge of Plaintiff's employment in violation of the public policy of North Carolina.

2.  Plaintiff, Makayla Grado, is a female citizen and resident of Mecklenburg County at all times alleged, and is an "employee or eligible employee" within the meaning under Title VII, who has resided in multiple states and counties, including Mecklenburg County, in an effort to seek gainful employment after being harmed financially due to Defendants actions.

3.  Prior to being terminated by Defendants, Plaintiff was an at-will employee of the Defendants hired to work at one of Defendants' locations in Mecklenburg County, North Carolina.

1

Case 3:25-cv-00130-EDW-SCR    Document 1-4    Filed 02/19/25    Page 2 of 11
Electronically Filed Date. 12/23/2024 12.41 PM Mecklenburg County Clerk of Superior Court

4.      Defendants The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health and/or The Charlotte-Mecklenburg Hospital Authority d/b/a Advocate Health, Inc., respectively, aka "Atrium Health" operate in the state of and under the laws of North Carolina.

5.      Defendants Atrium Health and Advocate Aurora Health came together as Advocate Health, also referred to as Atrium Health, and operate in the state of and under the laws of North Carolina.

6.      Defendants Advocate Health Inc. and Atrium Health, Inc. are organization(s) operating under the laws of North Carolina.

7.      Defendants provide healthcare services to individuals and recognized as one of the largest healthcare organizations in the state of North Carolina.

8.      Defendants Atrium Health and all employees thereof, were at all times herein, working within the course and scope of their employment and in furtherance of their employer's operations.

9.      Upon information and belief, and at all times pertinent to this action, Defendants have existed for the benefit and interest of the other and upon coming together as "Atrium Health," in whatever form that has taken, have not operated as an independent entity of the other, and to the extent any of the Defendants assert otherwise, with respect to the decisions pertinent to Plaintiff's causes of action herein, all as named and captioned in this Complaint, have operated and acted as a single entity, and are sometimes and herein collectively referred to hereafter and above as "Atrium Health" "Defendants" or the Corporate Defendants."

10.     At all times pertinent to this action, upon information and belief, Atrium Health is affiliated, operate in and through joint venture(s) and/or share the same ownership or control over the entity by which Plaintiff was employed.

11.     Joint venture liability with respect to the Corporate Defendants and Corporate Defendants predecessors in interest exists based on the nature of their relationship, joint venture(s) and actions.

12.     Upon information and belief, contractual obligations exist as between the Corporate Defendants, each of which acted in furtherance of protecting and advancing its interest.

13.     Upon information and belief, Corporate Defendants through its/their actions, web of agreements, trade names and/or corporate structures with various affiliated and unaffiliated service providers, shared ultimate responsibility and authority to exert control over Plaintiff and to direct pay practices, employment policies and illegal discharge of Plaintiff as challenged and alleged in this Complaint.

2

14.     As such, there is a sufficient nexus to establish proper jurisdiction and liability on the claims herein that the Corporate Defendants were Plaintiff's employer.

15.     The Corporate Defendants, Atrium Health, are vicariously liable for the actions of its employees, officers, management and other of its agents.

16.     At all times mentioned herein, unless otherwise stated, each manager, owner, officer, employee or other agent acting on behalf of Defendants, was an agent of that Defendant and in doing the things as alleged herein, acts and omissions hereinafter more fully alleged, was acting within the scope, authority or apparent authority of said agency and employment.

17.     Pursuant to the Doctrine of Respondeat Superior and the principles of agency, Defendants are vicariously liable, or alternatively imputable, for the acts and actions of the other of its employees, supervisors, management, subsidiaries, branch offices, and agents thereof while performing within the scope of employment and/or duties.

18.     At all times alleged herein, Atrium Health was and continues to be engaged in an industry affecting commerce and is an "employer" within the meaning of Title VII, as it regularly employs over 500 employees.

19.     At all times alleged herein, Atrium Health employed 15 or more employees and is an employer within the meaning of the N.C. Gen. Stat. § 143-422.2.

20.     Mecklenburg County Superior Court has subject matter and personal jurisdiction over the parties in this Complaint.

21.     This matter is properly before the Mecklenburg County Superior Cour pursuant to, without limitation, N.C. Gen. Stat. § 7A-243 because the amount in controversy is in excess of $25,000.00.

22.     Plaintiff has timely and fully satisfied the prerequisites for administrative exhaustion required for filing suit in this Court under the ADA and Title VII.

## II.     FACTS

23.     The foregoing paragraphs are re-alleged and incorporated herein by reference.

24.     All facts as applicable to any particular cause of action and taken throughout Plaintiff's Complaint shall apply to any and all cause(s) of action, as applicable, without regard to headings, as if said facts are fully and actually set forth in each section hereto.

25.     In March 2023, Plaintiff applied for a position with Atrium Health as a Certified Registered Medical Assistant (CMA) South Park Internal Medicine.

3

26. Plaintiff was qualified for the position as she had worked as a medical assistant in Texas for over 3 years.

27. Plaintiff interviewed for the position in March 2023 and Plaintiff accepted Defendants' offer and was hired for the position on or around March 29, 2023.

28. Plaintiff was residing in Texas at the time of the interviews and when the offer for the position was made. Atrium Health informed Plaintiff that they expected her to start work on or about April 10, 2023.

29. Plaintiff accepted the offer and she and her family commenced the move to North Carolina earlier than she had planned, in order to accommodate Atrium Health's request to start working earlier than originally discussed.

30. The job offer included a $2000 relocation payment and a $7500 sign-on bonus.

31. Plaintiff completed the background check, finger printing, labs and vaccinations.

32. Plaintiff informed the human resources recruiter that she a pre-existing disabling condition, Fibromyalgia.

33. Plaintiff had a history and record of her impairment and suffered from diagnosed medical condition that substantially limited her in one or more major life activities, where she could need some intermittent accommodations when she experienced flare-ups.

34. Plaintiff communicated this to Defendant's representatives.

35. After receiving this information, Defendants pushed back Plaintiff's start date from April 10, 2023 to April 17, 2023.

36. Defendants pushed Plaintiff's start date back again from April 17, 2023 to April 24, 2023.

37. The Talent Acquisition Specialist (employees/agents of Defendants) told Plaintiff that there was an issue with her health screening that had yet to be resolved but that they did not have any more information to provide.

38. On or about April 12, 2023, the Talent and Acquisition Specialists informed Plaintiff that she would no longer be considered for the position.

39. Plaintiff requested to have a discussion with the Defendants about how the accommodation could work best for both her and the company.

40. Plaintiff even informed the company that she would withdraw her accommodations request so that she could work.

41.     Plaintiff did not receive the full income, wages, benefits or payments from Defendants and was limited to a net relocation amount of $1606.34 after taxes were withheld from the gross amount of $2000.00.

42.     At all times relevant, Plaintiff was willing and able to perform the essential functions of the position.

43.     Defendant failed to engage Plaintiff in a back and forth exchange of about Plaintiff's limitations, employer's needs and possible accommodations.

44.     After having the first position revoked by Defendants, Plaintiff was not allowed to work and applied for another open position for a Certified Registered Medical Assistant in South Park Dermatology office.

45.     Plaintiff was qualified for the position. She interviewed and demonstrated her abilities so well that she was offered the position on or around May 16, 2023.

46.     Plaintiff was offered compensation of $19.50 per hour and a $7500.00 sign on bonus.

47.     Plaintiff did not disclose that she had Fibromyalgia for this second position nor did she request any accommodations.

48.     Plaintiff was supposed to begin this second position on or about June 5, 2023.

49.     On May 31, 2024, Defendants informed Plaintiff that something was wrong with her health screening and pushed her start date back to June 12, 2023.

50.     On June 7, 2023, Defendants informed Plaintiff that they were revoking the offer letter for this new second position because of her accommodation requests.

51.     However, Plaintiff had not made any accommodations requests for this second position for a Certified Registered Medical Assistant in South Park Dermatology office.

52.     Plaintiff is an individual with a disability and that Defendants violated the ADA by discharging Plaintiff because of her disability and comingling medical information and Plaintiff's personnel file.

### III. VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT

53.     The foregoing paragraphs are re-alleged and incorporated herein by reference.

5

54. Title I of the ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

55. Plaintiff is a qualified individual with a disability who could have performed the duties of the CMA for both the Internal Medicine positions and the Dermatology positions.

56. Plaintiff is a person with a disability because she has a physical impairment that substantially limits one or more major life activities that has prevented her from engaging in her daily living activity routine, normal work duties, and regular lifestyle as set out above and herein.

57. Defendants were aware of Plaintiff's disability at all times relevant to this Complaint.

58. Defendants engaged in a per se violation of the ADA when they used information from two separate interviews, two different positions and comingled Plaintiff's medical information with her personnel file.

59. By its acts and omissions, and every act alleged in the paragraphs above and herein of this Complaint, and the pattern, practice, custom and usage of which said acts are a part, Defendants engaged in discriminatory conduct against the Plaintiff when it revoked her employment offers for the CMA positions in both the Internal Medicine Practice and Dermatology practice, interfered with Plaintiff's rights under the ADA, failed to engage in the interactive process and sought to avoid providing a reasonable accommodation to Plaintiff.

60. Defendants failed to engage in an interactive process to determine which restrictions on Plaintiff's ability to perform her job duties could be addressed and requested to be given the same or similar treatment as others in the distribution of work assignments based on Plaintiff's medical needs.

61. Defendants terminated Plaintiff because she had a medical condition that could periodically take her out of work and Defendants sought to avoid managing that by refusing to provide Plaintiff a reasonable accommodation.

62. As a direct and proximate result of Defendants' violation of Title I of the ADA, Plaintiff has suffered a loss of earnings and employment benefits, has been placed in great financial distress, and has been required to employ the services of attorneys to bring this lawsuit. Plaintiff suffered greater physical damage as a result of Defendants refusal to engage in the required interactive process and refusal to consider Plaintiff's disability other than by which to use Plaintiff's disability against Plaintiff. Plaintiff has also suffered severe emotional distress and physical anguish from the loss of gainful employment, and will continue to suffer additional damages in the future.

## IV. CLAIM OF RELIEF: DISABILITY – FAILURE TO ACCOMMODATE

63.     The foregoing paragraphs are re-alleged and incorporated herein by reference.

64.     Defendants engaged in a practice of accommodating other employees , but failed to accommodate Plaintiff who had a disabling condition causing the need for her accommodation to take intermittent leave due to flare ups from Fibromyalgia.

65.     Defendant denied Plaintiff these reasonable accommodations and failed to provide Plaintiff with any alternatives that would meet her medically approved restrictions.

66.     Defendant failed to engage in an interactive process with Plaintiff prior to revoking her job offer on April 12, 2023 regarding the CMA Internal Medicine position.

67.     Even though Plaintiff never requested an accommodation or put them on notice of her disability, Defendant clearly aware of said disability failed to engage in an interactive process with Plaintiff prior to revoking her offer on June 7, 2023 regarding the CMA Dermatology position.

68.     Providing a reasonable accommodation to Plaintiff would not and was not shown to create an undue hardship on Defendants, especially when such accommodations were allowed for other employees.

69.     Plaintiff has been harmed financially, physically and emotionally by Defendants failure to provide her reasonable accommodations.

70.     The Defendant's conduct and failure to accommodate constitutes a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

71.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered pecuniary and non-pecuniary harm, including lost and continued loss of compensation, benefits, promotional opportunities, emotional distress and suffering, inconvenience, mental anguish and loss of enjoyment of life.

## V.     CLAIM OF RELIEF: TITLE II OF THE ADA, RETALIATION

72.     The foregoing paragraphs are re-alleged and incorporated herein by reference. .

73.     Defendant has engaged in discriminatory conduct against Plaintiff when they failed to engage in the interactive process and provide Plaintiff with a reasonable accommodation as required under the ADA.

7

Case 3:25-cv-00130-FDW-SCR     Document 1-4     Filed 02/19/25     Page 8 of 11

74. Plaintiff suffered retaliation Defendants in violation of the ADA when Plaintiff was unlawfully discharged from the first position after Plaintiff's request for reasonable accommodation.

75. Plaintiff suffered retaliation by Defendants in violation of Title II of the ADA when Defendants interfered with Plaintiff's ability to work and revoked the second employment offer due to Plaintiff's disability on the information that she had requested a reasonable accommodation for the first position.

76. At all times relevant, Plaintiff was qualified and willing and able to perform the essential functions of the position.

77. When Plaintiff applied for the CMRA Dermatology position within Defendants' facilities, she at no time requested an accommodation and did not disclose her disability for the second position with the Defendant's Dermatology unit.

78. Yet in revoking Plaintiff's second offer , Defendants referenced both Plaintiff's disability and her request for a reasonable accommodation from another position for which she had previously applied.

79. Defendant's actions were in direct response to Plaintiff's health disclosure and in retaliation on the basis of Plaintiff's disability

80. Plaintiff has been harmed financially, physically and emotionally by the acts of Defendants.

81. Defendants' acts and omissions have been willful and committed with malice and/or a reckless disregard for Plaintiff's federally protected rights.

82. Defendants' actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq*. The stated reasons to Plaintiff and others for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory and retaliatory animus.

83. Accordingly, Plaintiff is entitled to recover compensatory and punitive damages.

**VI.   CLAIM FOR RELIEF : WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

84. The foregoing paragraphs are re-alleged and incorporated herein by reference.

85. Plaintiff engaged in legally protected activity as well as opposed Defendants' activity that was contrary to law as she was a member of a protected class, being disabled.

86. Plaintiff was wrongfully discharged because of her disability, and is a person with a disabling condition within the meaning of the statute, N.C. Gen. Stat. § 168A-3.

87. The public policy is expressed in these referenced statutes, and it is a violation of North Carolina public policy (N.C. Gen. Stat. § 168A-3) to discriminate on the basis of a disability in employment, and §143-422.2, respectively, states, "it is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex, or handicap by employers...",

88. Defendants wrongfully discriminated against Plaintiff when she was discharged by Defendants because of her disability in violation of North Carolina public policy.

89. By its above acts and those acts as incorporated hereinabove by reference, Defendants have wrongfully terminated plaintiff in violation of the public policy of North Carolina and Plaintiff will suffer irreparable harm in the absence of relief from this Court, and there is no adequate remedy at law to prevent such harm.

90. Accordingly, Plaintiff is entitled to declaratory, injunctive and equitable relief.

91. As a proximate result of Defendants' violations of the public policy of North Carolina, plaintiff has incurred and suffered substantial damages, including lost income and benefits and other economic losses, mental anguish and emotional distress, loss of quality and enjoyment of life, and employment reputation and other losses to be proven at trial.

## VII. EXHAUSTION OF ADMINISTRATIVE REMEDIES

92. All conditions pursuant to 42 USC § 2000e-5(f)(3) have occurred, as Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 430-2024-00012, dated September 29, 2023, and the EEOC issued a Notice of Right-To-Sue on September 27, 2024, which is incorporated in this complaint (Exhibit A).

93. Plaintiff is filing this action within ninety (90) days of receiving the Notice of Right-To-Sue Letter.

94. Thus, Plaintiff has complied with all jurisdictional requirements and has exhausted administrative pre-requisites before initiating this action.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff respectfully requests that this Court grant the following relief:

9

1.  Lost wages, salary, employment benefits and other compensation that was lost due to Defendants' actions in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act 42 U.S.C. § 12101, *et seq.*, and N.C. Gen. Stat. §143-422.2 and N.C. Gen. Stat.§168A-3;

2.  A judgment in favor of Plaintiff and against Defendants for the emotional distress, physical pain and suffering caused by Defendant discrimination and retaliation against Plaintiff;

3.  Award Plaintiff back pay and front pay and any other compensatory damages suffered by Plaintiff which were caused by Defendants' actions as alleged herein;

4.  Plaintiff to recover pre-judgment and post-judgment interest on all damages awarded herein;

5.  Award Plaintiff punitive damages as provided by law for Defendants actions alleged herein;

6.  The Court award Plaintiff an award for costs and reasonable attorney's fees and other litigation expenses pursuant to § 706(k) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k);

7.  Trial by jury; and

8.  The Court order such other and further relief as it may deem just and appropriate.

This the  23  day of December 2024.

*Lawrence Wooden*
Lawrence Wooden
Wooden Bowers PLLC
NC Bar #:47199
10130 Mallard Creek Rd. Suite 300
Charlotte, North Carolina 28262
Telephone: 704-665-5838
Facsimile:   704-973-9380
Email: lwooden@wbvlaw.com
*Attorney for the Plaintiff*

10